EMMONS *v.* STATE.

Opinion delivered October 13, 1913.

1. EVIDENCE—RELEVANCY—ASSAULT WITH INTENT TO KILL.—Where defendant was charged with assault with intent to kill, by sending poison through the mail, and denied the placing of any poison in the package sent, evidence of the general reputation of another

person, with whom defendant was jointly indicted, as a "voodoo" doctor, and that he gave her certain articles for certain magical purposes, is irrelevant and inadmissible. (Page 419.)

2.  Assault with intent to kill—identification of article sent by mail—sufficiency of evidence.—Where defendant sent bottles of whiskey and beer by mail, which were received by the prosecuting witness, evidence held sufficient to identify the bottles opened by a chemist and found to contain poison, as the same bottles that were sent by defendant. (Page 420.)

Appeal from Phillips Circuit Court; *J. M. Jackson,* Judge; affirmed.

STATEMENT BY THE COURT.

The appellant was indicted jointly with Sam Hunter for the crime of assault with intent to kill one Ellen Hall by administering poison.

The prosecuting witness testified that she lived at Elaine, in Phillips County. She received a letter postmarked "Helena, Arkansas," which reads as follows: "Helena, Ark., March 14, 1913. Ellen Hall. Dear Sweetheart: How are you? I am in Helena and feeling very well. Would be glad to see you, but it is so I can not today, but I am sending you a package by express, prepaid. Trusting you are well at present, yours truly." Witness went to the depot and got the package. She recognized the carton exhibited to the jury as the same she received. There was a quart of whiskey and two bottles of beer in the package, which witness carried to Ed Hare. When witness carried the package to Hare, it was closed down and sealed. He cut the seal, and the two bottles of beer and quart of whiskey were taken out. Afterward it was put back and carried and delivered to the doctor at Elaine. Witness had not seen it from that day until the trial.

Witness had known Hattie Emmons for two or three years. She had had trouble with her last March, before receiving this package. Hattie Emmons claimed that witness was going with her husband. Witness told the appellant that she had nothing to do with appellant's husband; never saw him, and didn't send him any letter. Witness got the package the same day she received the

letter. The beer looked green, and there was something in the whiskey bottle; never pulled the seal off of either of them. The bottles had tin tops.

Ed Hare testified that Ellen Hall brought a package of whiskey to him which was sealed up. He saw it cut open, and it contained a quart of whiskey and two bottles of beer. It was not opened at his house. The way Ellen Hall talked and acted, witness suspected that the beer and whiskey were not right. Therefore he did not drink any of it. The next morning Ellen Hall's brother Frank came, and they carried the whiskey to the doctor at Elaine.

Witness Annie Hare stated that she examined the beer and whiskey after her husband, Ed Hare, had taken same out of the sealed package, and the beer looked like it had little dregs in the bottom. She saw nothing about the whiskey except a little cork floating on the top. The color of the beer was bluish or kind of greenish looking. There were dents in the little tin stoppers.

The record contains the following stipulation: "It is admitted that Doctor............would testify that Ellen Hall delivered to him two bottles of beer and a quart of whiskey, and that he delivered the same articles to J. N. Moore, and that Moore will testify that he received the same and turned them over to Albert Bailey."

Bailey testified that J. N. Moore, deputy sheriff at Elaine, turned over to him a bottle of Tom Collins whiskey and a bottle of Cook's Goldblume beer in March, 1913. That he first carried it to Doctor Trotter, and then afterward carried it to Myer's drug store, and had him pack it up and ship it to Memphis by express. He didn't remember the express company, but Doctor Morris got the receipt. It was addressed to Doctor McElroy.

By agreement the report of Dr. P. W. Holtzendorff, an analytical chemist, was read to the jury, showing that he received an express package from Doctor McElroy with instructions to open and analyze the contents of two bottles. He did so and found in each arsenite of copper, commonly known as paris green, emerald green, etc. It

was shown that one of the bottles was Cook's Goldblume beer, and the other was Tom Collins whiskey. It was shown from the analysis that the bottles of beer contained enough poison to have killed ten men.

The appellant objected to this testimony, the ground of the objection being that the testimony was incompetent for the reason that the "stuff" was opened "and in the woman's (Ellen Hall's) hands; that the testimony shows that she kept it over night." Appellant objected to any analysis made of "this stuff" after it had been in her hands that length of time.

It was shown by Doctor Trotter that when the bottles were received by him he thought both bottles had been opened. He was not positive whether the beer bottle had a tin stopper on it when he received it, but was inclined to think it had a stopper; he thought it had a cork in it. He further testified that he examined the bottles on the outside, and the color of the beer was a milky or muddy color. He saw but little change in the whiskey.

There was testimony on behalf of the State which tended to show that the appellant, in connection with a black man, bought two bottles of beer and a bottle of whiskey in Helena, and that appellant had same addressed to Ellen Hall, Elaine, on the 20th of March, 1913. They had the beer and whiskey put in a sealed package, and the carton was addressed to Ellen Hall. The party who was with the appellant offered to prepay the express on the package.

The appellant testified that she had had "fusses" with the prosecuting witness about her husband, and that Ellen Hall had come between her and her husband about a year ago last April. Appellant, while admitting that she bought the beer and whiskey, denied that she put any poison or compound of any kind in the same.

Appellant offered to prove by the testimony of various witnesses that the general reputation of one Sam Hunter in the community where he lived, among the colored people especially, was that of a "voodoo" doctor, and that he claimed to have magical powers over people;

that Sam Hunter gave to appellant three tablets which he told appellant to sprinkle around the house and on the footsteps of Ellen Hall, and thereby bring her husband back to her and cause him to forget the other woman. The court refused to permit this evidence of the general reputation of Sam Hunter among the colored people, and the testimony as to what Sam Hunter had said to appellant in regard to the effect of his mystic art both before and at the time appellant bought the beer, to which the appellant duly excepted.

The court read section 1588, of Kirby's Digest, defining assault with intent to kill by administering poison, and the punishment therefor, and gave other instructions to which no exceptions were taken. The jury returned a verdict finding the appellant guilty, and assessing her punishment at five years in the penitentiary, and from the sentence and judgment of the court this appeal has been duly prosecuted.

*Appellant pro se.*

1. The offered testimony of appellant as to what Sam Hunter, the "voodoo man," had told her he could do in regard to the trouble between herself and her husband, should have been admitted, and she should have been permitted to exhibit to the jury the "magic" potions he gave her to sprinkle around the house and on the tracks of Ellen Hall thereby to bring her husband back to her. These parties are all ignorant, superstitious negroes. The evidence was admissible to show the intent of appellant. 8 Fed. 232; 30 App. D. C. 1.

The jury were entitled to know all the facts and circumstances that might throw light on the actual intent of appellant. 54 Ark. 283. 49 Ark. 157; 1 Bishop, Crim. Law, § 735, note 1.

2. It was error to admit in evidence the analysis of the contents of the bottles by Doctor Holtzendorff, without proof that the condition of the contents was the same when received and examined by him as when received by Ellen Hall. 110 S. W. 52; 77 Ark. 238; 71 Ark. 69; 91 Ark. 175.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

1. Hunter's general reputation as a "voodoo man," etc., was properly excluded. 16 Cyc. 1211-1212.

2. Doctor Holtzendorff's analysis of the contents of the bottles was properly admitted. See *Davidson* v. *State,* 109 Ark. 450.

WOOD, J., (after stating the facts). The court did not err in refusing to permit the offered testimony as to the general reputation of Sam Hunter in the community where he lived as a "voodoo" doctor. Appellant denied that she put any poison or compound of any kind in the beer or whiskey. The testimony therefore was not relevant.

If the appellant had admitted that she had put a compound or powders in the beer or whiskey that she did not know to be poison, then this testimony might have been admissible as tending to show her purpose in so doing.

The testimony, as set forth in the statement, was sufficient to show that the bottles were in the same condition when received by the prosecuting witness, Ellen Hall, as they were when they were delivered to the chemist to be analyzed by him. The testimony of the prosecuting witness shows that she delivered the package to Ed Hare in the same condition in which she received it, and the testimony of Hare shows that the carton which held the beer and whiskey was sealed up when he received it. He shows that none of it was opened while it was in his house, and that the next day it was taken by the prosecuting witness and her brother to the doctor. It was admitted that the doctor, whose name was not given, would testify that he delivered the same articles to J. N. Moore, and that Moore would testify that he turned the same articles over to Bailey, and Bailey testified that he carried the same articles to Doctor Trotter, and Doctor Trotter testified that he sent the bottles of Cook's beer and Tom Collins whiskey, the same articles that Bailey delivered to him, over to his particular friend, Dr.

J. D. McElroy, and that McElroy turned it over to the State chemist, Doctor Holtzendorff. Doctor Holtzendorff shows that the package, as delivered to him, was intact and contained two bottles, one marked "Goldblume Beer," and the other "Tom Collins Whiskey," and that he analyzed the contents of these two bottles, and his report shows what they contained.

We are of the opinion that this testimony sufficiently identifies the beer and whiskey and shows that it was in the same condition when it was analyzed by the chemist; so far as the contents are concerned, as it was when it was received by the prosecuting witness, Ellen Hall. *Davidson* v. *State,* 109 Ark. 420. There is nothing in this testimony to warrant the inference that any one had injected any poison into the bottles from the time they were sent by appellant and her companion from Helena on the 20th of March, 1913, to Ellen Hall, at Elaine, nor anything to warrant the conclusion that anything had been injected into the contents of the bottles from the time Ellen Hall received the same until they were analyzed by the chemist, whose report showed that they contained poison.

There was testimony tending to show a motive on the part of the appellant for the commission of the offense, and the testimony, upon the whole, is sufficient, in our opinion, to sustain the verdict finding her guilty of the crime charged. It is conceded that there was no error in the charge of the court. The judgment must therefore be affirmed, and it is so ordered.